UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SUBWAY INTERNATIONAL B.V., : | |
|     Plaintiff : | |
| : | |
| v. : | Case No.: 3:10-cv-01715 (PCD) |
| : | |
| PANAYOTA BLETAS : | |
|     Defendant. : | |

### RULING ON MOTIONS TO TRANSFER AND DISMISS

Defendant Panayota Bletas presents this Court with two motions: (1) to transfer venue to the Supreme Court of the State of New York and (2) to dismiss this action. For the reasons stated herein, Defendant's motions [Doc. Nos. 43 and 61] are **denied**.

**I. BACKGROUND**

Plaintiff, Subway International B.V. ("SIBV"), an international franchisor of SUBWAY® sandwich stores, is a Netherlands limited liability corporation with a principal place of business in Amsterdam. On March 31, 2005, Plaintiff and Defendant entered into Franchise Agreement No. 36829 ("Franchise Agreement"), permitting Defendant to operate a Subway restaurant in Greece provided that Defendant pay Plaintiff weekly royalty and advertising fees out of her restaurant's gross sales. (Pl.'s Appl. to Confirm Arbitr. Award ¶¶ 5-7.) The Franchise Agreement contained a dispute resolution clause that provides in relevant part: "[t]he parties will arbitrate any Dispute the parties do not settle under the discussion procedures above, and any Dispute which this Agreement provides will be submitted directly to arbitration, except as provided in the Agreement." (Franchise Agr. ¶ 10.c.) The parties also stipulated in the Franchise Agreement that they would arbitrate such disputes in accordance with the United Nations Commission on International Trade Regulations and Law Arbitration Rules administered by an

arbitration agency, such as the International Centre for Dispute Resolution, at a hearing to be held in New York, New York. (Id.)

On September 3, 2009, Plaintiff filed a Demand for Arbitration with the International Centre for Dispute Resolution, alleging that Defendant breached paragraphs 2 and 5.i. of the Franchise Agreement by failing to pay royalty and advertising fees. (Pl.'s Appl. to Confirm Arbitr. Award ¶ 9.) In response, Defendant filed defenses and counterclaims with the International Centre for Dispute Resolution. (Id.) Upon review of all claims and defenses raised by Plaintiff and Defendant, the International Centre for Dispute Resolution issued a partial final award dated June 17, 2010. (Id. ¶ 10.) Pursuant to the partial final award, Plaintiff was awarded 11,367.82 Euros for outstanding royalty and advertising fees, with the condition that Plaintiff provide Defendant with the appropriate tax document for payment. (Id. ¶ 11.) On July 9, 2010, Plaintiff provided Defendant's counsel with the tax document, but Defendant failed to pay Plaintiff in compliance with the arbitration award. (Id. ¶ 12.)

As part of the arbitrator's ruling, the parties were directed to submit briefs on the subject of legal fees and costs within 21 days from the date of the partial final award. (Id. ¶ 13.) On August 11, 2010, the arbitrator entered a final award, which granted Plaintiff $2,200.00 in arbitration fees and costs and confirmed the partial final award dated June 17, 2010. (Id. ¶ 15.) As such, Defendant was directed to pay Plaintiff the net sum of 12,951.41 Euros or $17,999.32. (Id. ¶ 16.)

On September 10, 2010, Defendant filed an action in New York state court seeking to vacate the arbitration award at issue in this case. (Pl.'s Opp'n to Defs.' Mot. to Dismiss at 3.) The action was dismissed on December 9, 2010 due to improper service and lack of merit. (Id.)

On September 10, 2010, Defendant, with her husband, also filed an action in New York state court seeking to vacate a different arbitration award, and that action was dismissed on November 10, 2010, due to improper service. (Id.) On December 14, 2010, Defendant and her husband combined the two previously dismissed actions and again filed them in New York state court as a single petition to vacate the arbitration awards, which is still pending. (Id.) On October 28, 2010, Plaintiff filed this action, which seeks to confirm the arbitration award. Defendant now moves to transfer this case to a New York state court and to dismiss this action. Because Defendant's motions to transfer and dismiss address related issues, this Court will consider the motions simultaneously.

## II. DISCUSSION

### A. Motion to Transfer

Defendant argues that this case should be transferred to a New York state court. Her primary argument in support of the motion is that the arbitration award is the product of fraud by the arbitrator and Plaintiff and that, pursuant to District of Connecticut Local Rule 83.7 ("Local Rule 83.7") and the Federal Arbitration Act ("FAA"), this Court should transfer the case to New York state court. Neither the FAA nor Local Rule 83.7 provide any support for Defendant's motion, however. The FAA, a federal statute setting forth the procedures for enforcing arbitration agreements, says nothing about transferring motions to compel arbitration from federal court to state court. Nor is Local Rule 83.7 a source of authority for transferring this case to New York state court. While the rule deals with cases transferred from one district court to another or cases remanded to state court, it merely prescribes the clerks' mailing duties in the event of a transfer or remand; it is not a source of authority for transferring or remanding cases.

The only mention of state courts in Local Rule 83.7 concerns providing the appropriate state court with documents when a case has been remanded.

In her reply brief, Defendant contends that a number of other federal statutes provide authority for transferring this case to New York state court. The first statute Defendant relies on is 28 U.S.C. § 1441, which provides that a defendant may remove cases originating in state court to the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). Defendant's reliance on this statute is baseless; the statute provides no authority for transferring a case that originated in a district court to state court.

Defendant also argues that 28 U.S.C. §§ 1404 and 1406 provide authority for transferring this case to the New York Supreme Court. Despite her arguments to the contrary, Defendant will find no support for her transfer motion in these statutes either. Section 1404 provides federal courts with the discretionary authority to transfer a case to another federal district "[f]or the convenience of parties and witnesses, [and] in the interests of justice." 28 U.S.C. § 1404(a). The statute does not authorize federal courts to transfer cases to state courts. See Pope v. Atlantic Coast Line R. Co., 345 U.S. 379, 384 (1953) ("Section 1404(a), by its very terms, speaks to federal courts; it addresses itself only to that federal forum in which a lawsuit has been initiated; its function is to vest such a federal forum with the power to transfer a transitory cause of action to a more convenient federal court."). Similarly, § 1406 only authorizes district courts to transfer cases to other district courts. Under the statute, district courts are permitted to either dismiss or transfer an action when venue is improper "if it be in the interests of justice," to "any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

Simply put, this Court does not have the authority to transfer this case to New York state court. The motion to transfer is therefore denied.

**B. Motion to Dismiss**

In support of her motion to dismiss, Defendant appears to make the following arguments: (1) Plaintiff does not have personal jurisdiction over her because of improper service of process; (2) this court does not have subject matter jurisdiction over the dispute; (3) venue is improper in the District of Connecticut; and (4) the case should be dismissed because of parallel litigation in New York state court. Each of these arguments is addressed in turn.

Defendant argues that personal jurisdiction is lacking because Plaintiff failed to properly serve her. It is well-settled that lack of personal jurisdiction is a privileged defense that can be waived "by failure to assert it seasonably, by formal submission in a cause, or by submission through conduct." Neirbo Co. v. Bethlehem Shipbuilding Corp., 308 U.S. 165, 168 (1939); see also Peterson v. Highland Music, Inc., 140 F.3d 1313, 1318 (9th Cir. 1988) ("Most defenses, including the defense of lack of personal jurisdiction, may be waived as a result of the course of conduct pursued by a party during litigation."). The Second Circuit has also advised that a defendant can forfeit the personal jurisdiction defense arising from improper service of process even when it has been included in the answer. In Datskow v. Teledyne, Inc. Continental Products Div., 899 F.2d 1298, 1303 (2d Cir. 1990), the court held that the defendant forfeited the personal jurisdiction defense raised in its answer when it participated in a scheduling conference with a magistrate judge, during which Defendant did not mention the allegedly defective service of process. In this case, although Defendant included the defense in her answer, she participated in a settlement conference similar to the proceedings that took place in Datskow in which she did

5

not raise the issue of defective service of process or expressly state that she did not waive the defense by participating in the conference. Consequently, Defendant's participation in the settlement conference resulted in a waiver of the personal jurisdiction defense.

Defendant also argues that the Court lacks subject matter jurisdiction apparently due to the pendency of Defendant's related actions in state court.[1] This argument has no merit. Federal question jurisdiction clearly exists under 28 U.S.C. § 1331 because this case concerns an action to confirm an arbitration award pursuant to the terms of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. § 201. 9 U.S.C. § 207 provides:

> Within three years after an arbitral award falling under the Convention is made, any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration. The court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in said Convention.

9 U.S.C. § 207. This Court has jurisdiction over Plaintiff's petition to confirm the award pursuant to § 203, which states that "[a]n action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States. The district courts of the United States . . . shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy." 9 U.S.C. § 203.

Defendant counters that the Court lacks jurisdiction due to 9 U.S.C. § 10 because fraud was committed. However, such a claim does not divest this Court of jurisdiction under the Arbitration Act. Instead, Defendant's allegations of fraud concerns whether this Court "shall

---

[1] Although Defendant claims that this Court lacks subject matter jurisdiction in her memoranda supporting the motions to transfer and dismiss, she fails to espouse any clear argument for such claims. However, in her memorandum in support of her motion to dismiss, Defendant refers to the pending actions in New York state court after arguing that this Court lacks jurisdiction.

6

confirm the award . . . ," 9 U.S.C. § 207, not whether jurisdiction exists. Therefore, this Court has subject matter jurisdiction over Plaintiff's action to confirm the arbitration award.

Defendant's third argument in support of her motion to dismiss appears to be that venue is improper because the arbitration award was made in New York. Parties may specify the courts in which arbitration awards may be confirmed. 9 U.S.C. § 9. In this case, the parties stipulated that "[a]ny court having jurisdiction may enter judgment on the arbitrator's award." (Franchise Agr. ¶ 10.c.) Accordingly, because this Court has subject matter jurisdiction and personal jurisdiction over Defendant, venue is proper.

Lastly, Defendant asks this Court to dismiss the action on the grounds that it was improperly filed because a related action is pending in New York state court. Despite Defendant's arguments to the contrary, Plaintiff is not barred from seeking to confirm the arbitration award in a district court simply because Defendant filed a related case in a state court. Although the first filed rule permits district courts to transfer or dismiss "subsequently commenced litigation involving the same parties and the same issues when both suits are pending in federal courts," Alden Corp. v. Eazypower Corp., 294 F. Supp. 2d 233, 235 (D.Conn. 2003) (citing First City Nat'l Bank & Trust Co. v. Simmons, 878 F.2d 76, 77-79 (2d Cir. 1989)), the rule does not apply here because the first filed case is pending in state court.

Defendant alternatively argues that this Court should abstain from adjudicating this case because of the parallel state court proceeding.

> Abstention from the exercise of federal jurisdiction is the exception, not the rule. 'The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this

>     doctrine only in the exceptional circumstances where the order to the parties to
>     repair to the state court would clearly serve an important countervailing interest.'

Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 813 (1976) (quoting County of Allegheny v. Frank Mashuda Co., 360 U.S. 185, 188-89 (1959)).  Moreover, when dealing with concurrent litigation between state and federal courts, "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the federal court having jurisdiction,"  Colorado River Water Conservation Dist., 424 U.S. at 817 (quoting McClellan v. Carland, 217 U.S. 268, 282 (1910)), and "[o]nly the clearest of justifications will warrant dismissal." Colorado River Water Conservation Dist., 424 U.S. at 819.

In the Second Circuit, it is well-established that the following factors should be balanced to determine whether dismissal of a federal case is warranted under the Colorado River doctrine: "(1) assumption of jurisdiction over a *res*; (2) inconvenience of the forum; (3) avoidance of piecemeal litigation; (4) order in which the actions were filed; (5) the law that provides the rule of decision; and (6) protection of the federal plaintiff's rights." Williams v. Lambert, 46 F.3d 1275, 1283 (2d Cir. 1995)(citing De Cisneros v. Younger, 871 F.2d 305, 307 (2d Cir. 1989)). Turning to the present case, one factor–desire to avoid piecemeal litigation–arguably weighs in favor of abstention.  However, neither party has alleged that this forum is inconvenient, this case was filed before the combined New York state court action was filed on December 14, 2010, and this action implicates a federal law, the Federal Arbitration Act, and a treaty, the Convention on the Recognition and Enforcement of Foreign Arbitral Awards.  Given the number of factors weighing against abstention and the fact that Colorado River abstention is applied sparingly, the Court will not abstain from adjudicating this case because of the parallel state court proceedings.  Thus, there is no justification for dismissal.

**III. CONCLUSION**

For the reasons stated herein, Defendant's motions to dismiss or transfer to New York state court [Doc. Nos. 43 and 61] are **denied**.

SO ORDERED

Dated at New Haven, Connecticut, this  8th  day of August, 2011.

/s/

Peter C. Dorsey, U.S. District Judge

United States District Court